IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MATSON GROUP, LLC | ) | CASE NO. |
| 2299 Ardleigh Drive | ) | |
| Cleveland Heights, Ohio 44106 | ) | JUDGE |
| | ) | |
| and | ) | |
| | ) | |
| MEEGAN MCGEE | ) | |
| 2299 Ardleigh Drive | ) | |
| Cleveland Heights, Ohio 44106, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | **(With Jury Demand Endorsed** |
| ASIA SALES AND MARKETING, LLC | ) | **Herein** |
| 11900 Wayzata Boulevard, Suite 100 | ) | |
| Minnetonka, Minnesota 55305, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

For its Complaint against Defendant Asia Sales and Marketing, LLC ("ASM"), Plaintiffs, Matson Group, LLC ("Matson Group") and Meegan McGee ("McGee") (collectively, the "Plaintiffs"), by and through its undersigned counsel, state and allege as set forth below.

1. Plaintiff Matson Group is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in this district in the State of Ohio. Plaintiff McGee is an individual residing in this district in the State of Ohio. Defendant ASM is a limited liability company organized under the laws of the State of Minnesota, with its principal place of business in Minnesota. The matter in controversy in this action exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

2. Plaintiff Matson Group is a duly organized and validly existing limited liability company under the laws of the State of Ohio, with its principal place of business at 2299 Ardleigh Drive, Cleveland Heights, Ohio 44106. Plaintiff McGee is the sole owner of Plaintiff Matson Group and, in addition to owning Plaintiff Matson Group, is the sole individual who performs the work of the Matson Group. Plaintiff McGee resides at 2299 Ardleigh Drive, Cleveland Heights, Ohio 44106. Plaintiff Matson Group acted as a sales representative and agent on a non-exclusive basis for Defendant ASM. Plaintiff McGee is joined to this action for the purposes of the declaratory relief requested herein.

3. Defendant ASM is a duly organized and validly existing limited liability company under the laws of the State of Minnesota, with its principal place of business at 11900 Wayzata Boulevard, Suite 100, Minnetonka, Minnesota, 55305. Defendant ASM is an importer of seasonal goods that it sells to major North American retailers, typically through a drop-ship mode of delivery. Defendant ASM imports and sells products that it purchases from various factories in China, including Packway Industries Limited and Winners. Defendant ASM used Plaintiff Matson Group as a sales representative.

4. Defendant ASM contracted with Plaintiff Matson Group in the State of Ohio and paid or was supposed to pay Plaintiff Matson Group commissions and expense reimbursements at Plaintiff Matson Group's office in this district in the State of Ohio. Defendant ASM also sent communications to Defendant Matson Group in the State of Ohio, during their business relationship and thereafter.

5. Plaintiff Matson Group and Defendant ASM started their contractual relationship in or about November or December 2007. Plaintiff Matson Group and Defendant ASM did not

enter into a written sales representative agreement; rather, the parties formed and operated under an oral sales representative agreement. (As a result, Plaintiff Matson Group cannot attach a copy of a written sales representative agreement to its Complaint.) Plaintiff Matson Group terminated its contractual relationship with Defendant ASM on December 29, 2009.

6. Plaintiff McGee, on behalf of Plaintiff Matson, and Jennifer Sethre, on behalf of Defendant ASM, entered into and established a sales representative agreement between such companies, which was modified by the parties from time to time during the contractual relationship. The terms of such sales representative agreement included the following:

(a) Plaintiff Matson Group would work as an independent contractor for Defendant ASM. It was a contractual arrangement. No special or fiduciary relationship whereby Plaintiff Matson would owe Defendant ASM any special or fiduciary duties was agreed to or otherwise created. During the relationship, Defendant ASM attempted to hire Plaintiff McGee as an employee, but this offer was declined;

(b) Plaintiff Matson Group would act as a sales representative for Defendant ASM. In such capacity, Plaintiff Matson Group did not serve as Defendant ASM's agent. It had no authority to bind Defendant ASM to any contract or commitment, including an order from a customer, and Defendant ASM made its own contracts and commitments with third-parties and retained the right to accept or reject any order procured by Plaintiff Matson Group;

(c) Plaintiff Matson Group was not assigned a territory; rather, Defendant ASM assigned certain customers to Plaintiff Matson Group, as well as prospective customers. These customers included Home Depot Canada, Hudson Bay Company (which includes Zellers and The Bay), Walmart Canada, Sears Canada, Canadian Tire Corporation, Home Depot US, Loblaws Companies Limited, Lowes Canada, and Costco Canada.

(d) The relationship between Plaintiff Matson Group and Defendant ASM was a non-exclusive relationship. Plaintiff Matson Group could represent principals other than Defendant ASM and Defendant ASM could use sales representatives other than Plaintiff Matson Group. Plaintiff Matson Group and Defendant ASM did not discuss whether Defendant ASM could use such other sales representatives on the customers assigned to Plaintiff Matson Group, but this

never occurred to Plaintiff Matson Group's knowledge, so that the issue was not confronted by the parties;

(e) Plaintiff Matson Group and Defendant ASM did not agree that Plaintiff Matson Group would be bound by any non-competition, non-solicitation, non-acceptance, confidentiality and non-use or any other restrictive covenants. Shortly before the termination of the relationship, however, Defendant ASM proposed that Plaintiff Matson Group enter into an Employee/Contractor Confidentiality Agreement. (A true and correct copy of such proposed agreement is attached hereto as Exhibit A and incorporated herein.) Plaintiff Matson Group declined to do so;

(f) Originally, Plaintiff Matson Group's responsibilities as a sales representative included: (a) contact list of customers to procure meetings; (b) attending meetings in such places as Hong Kong and Toronto; (c) product presentation; and (d) implementation of program, including listing forms, procuring purchase orders, facilitating packaging process and managing communication between Defendant ASM and customer. Subsequently, Plaintiff Matson Group agreed to assist in connection with a Canadian Retail Survey at Christmas that itemized certain information by retailer, but declined to add product development specialist and factory liason services to her sales representative services;

(g) Defendant ASM was obligated to pay Plaintiff Matson Group a commission on sales to her assigned customers that she procured or otherwise devoted substantial effort to obtaining;

(h) Plaintiff Matson Group would be paid a 3% commission rate on gross orders less standard customer deductions. Plaintiff Matson Group specifically objected to and rejected all attempts by Defendant ASM to reduce this commission rate to 2%.

(i) Payment of commission was immediately due following Defendant ASM's receipt of the payment from the customer;

(j) Originally, the Plaintiff Matson Group paid its own expenses. Sometime in 2008, Defendant ASM agreed to reimburse Plaintiff Matson Group for its expenses associated with providing sales representative services to it incurred in connection with existing and prospective customers; and

(k) Either party could terminate the contractual relationship without notice.

7. In July 2009, Defendant ASM expressed the desire to obtain a written contract from Plaintiff Matson Group. (A true and correct copy of this e-mail is attached hereto as Exhibit B and incorporated herein.) Plaintiff Matson Group did not execute a written contract after this e-mail, as she did not agree to all of the terms contained in it. This e-mail confirms, however, that Defendant ASM did not have a non-competition agreement with either Plaintiff. "We need to have some sort of non-compete clause that only deals with Trees and Lights to our current customer base and current customers we are calling." (Exhibit B, Point #5.)

8. In 2008, Plaintiff Matson Group repeatedly asked that it be paid the commissions it had earned with respect to a sale from one of its assigned customers, Home Depot US. After these demands, Defendant ASM paid Plaintiff Matson Group all of the commissions it owed to it for customers other than Home Depot US, but refused to pay Plaintiff Matson Group any commissions on the sales to Home Depot US. In refusing to pay Plaintiff Matson Group its commission for the sales to Home Depot US, Defendant ASM did not claim that Plaintiff Matson Group did not earn such commission. Rather, Defendant ASM claimed that it had "cash flow" problems because Home Depot US had taken a 10% hold back against tree damage (that was, of course, through no fault of Plaintiff Matson Group). Defendant ASM refused to pay Plaintiff Matson Group a commission on the invoiced price to Home Depot US (which reflected 100% of the payment to be received) or even based upon the amount of money actually collected from Home Depot US (which reflected 90% of the invoiced price). Plaintiff Matson Group estimates that the amount of commission owed to it for the sales to Home Depot US is no less than $42,000. Defendant ASM continues to refuse to pay Plaintiff Matson Group any commission on this sale, even after the contractual relationship was terminated on December 29, 2009, and has

5

not paid the commissions owed to the Matson Group for this sale or any portion of it to date.

9. Prior to the termination of the contractual relationship on December 29, 2009, Plaintiff Matson Group procured or performed substantial services that resulted in purchase orders from the Hudson Bay Company (including Zellers and the Bay) and Sears Canada and may result in addition purchase orders from the Hudson Bay Company. Defendant ASM has advised Plaintiff Matson Group that it will not pay it any commissions on these sales when the customer pays it for the product sold to it. Plaintiff Matson Group estimates that the amount of commissions involved in these sales is not less than $30,000.

10. Defendant ASM has also failed to pay Plaintiff Matson Group expenses it incurred in connection to work done on behalf of Defendant ASM for current and prospective customers. Plaintiff Matson Group estimates that the amount of expenses owed for travel, incidentals and samples is no less than $5,125.00.

11. Following the termination of the contractual relationship on December 29, 2009, the Plaintiff Matson Group became involved in a sale between a factory and Hudson Bay Group (Garden & Lights, a division of Packway Industries Limited). Defendant ASM has claimed that Plaintiffs lacked the right to become involved in this sale and to pursue the sale of certain products to the Hudson Bay Group, as if it had an agreement with Plaintiffs that contained non-competition and other restrictive covenants; as if Plaintiffs owed Defendant ASM fiduciary duties; and as if Plaintiffs were an employee of Defendant ASM who could usurp or convert a corporate opportunity, among other things. However, Defendant ASM has not only made this claim to Plaintiff. Defendant ASM has attempted, through threats, intimidation and other wrongful means, to prevent this sale from occurring unless it makes the sale itself. Defendant

ASM is attempting to enforce a non-existent non-competition agreement and to impose duties on Plaintiffs that simply do not exist. Plaintiff Matson Group estimates that it will lose no less than $50,000 in commission if this particular sale does not occur and that it will lose and continue to lose additional substantial commissions, which cannot presently be calculated, if Defendant ASM is able to impose the restrictions it seeks to impose on Plaintiffs in their business.

12. Both during and after the termination of the contractual relationship, Defendant ASM has not paid Plaintiff Matson Group all commissions and other monies that are due or which will become due to Plaintiff Matson Group.

13. Further, following the termination of the contractual relationship, Defendant ASM has sought to prevent Plaintiffs from engaging in lawful business activities and to impose restrictions on such conduct that have no basis whatsoever in the law.

14. Defendant ASM has acted intentionally, with reckless indifference, maliciously and in bad faith in engaging in its wrongful acts and omissions.

15. As the proximate result of Defendant ASM's wrongful conduct, Plaintiff Matson Group has sustained substantial damages and continues to sustain substantial damages in amounts that have not yet been fully ascertained but which exceed the jurisdictional minimum of this Court, the specific amounts of which will be proven at a trial of this action.

## **FIRST CLAIM FOR RELIEF**

### **(Breach of Contract)**

16. Plaintiff Matson Group realleges each allegation contained in Paragraphs 1 through 16 of its Complaint as if fully rewritten herein.

17. The oral sales representative agreement described and/or referenced herein was a

valid and enforceable contract between Plaintiff Matson Group and Defendant ASM.

18. Plaintiff Matson Group performed all of its obligations under such sales representative agreement.

19. Defendant ASM has materially breached such sales representative agreement by, among other things, failing to pay Plaintiff Matson Group all commissions and expense reimbursements to which Plaintiff Matson Group is entitled thereunder.

20. As the proximate result of Defendant ASM's wrongful conduct, Plaintiff Matson Group has sustained substantial damages and continues to sustain substantial damages in amounts that have not yet been fully ascertained, the specific amounts of which will be proven at a trial of this action.

## SECOND CLAIM FOR RELIEF

### (Anticipatory Breach of Contract)

21. Plaintiff Matson Group realleges each allegation contained in Paragraphs 1 through 20 of its Complaint as if fully rewritten herein.

22. The oral sales representative agreement described and/or referenced herein was a valid and enforceable contract between Plaintiff Matson Group and Defendant ASM.

23. Plaintiff Matson Group performed all of its obligations under such sales representative agreement.

24. Defendant ASM has indicated that it will not pay Plaintiff Matson Group either the full or even a partial commission (when Defendant ASM is paid by the customer for such sales) for orders it procured or for which it provided substantial assistance in obtaining for sales of products and programs to customers assigned to Plaintiff Matson Group. Defendant ASM's

conduct constitutes anticipatory breach of such sales representative agreement.

25. As the proximate result of Defendant ASM's wrongful conduct, Plaintiff Matson Group will sustain substantial damages in amounts that have not yet been fully ascertained, the specific amounts of which will be proven at a trial of this action.

### THIRD CLAIM FOR RELIEF

### (Declaratory Judgment)

26. Plaintiff realleges each allegation contained in Paragraphs 1 though 25 of its Complaint as if fully rewritten herein.

27. Real, immediate and substantial controversies exist among the parties relating to post-termination rights and obligations, including the following:

(a) Whether Defendant ASM has any obligation to pay Plaintiff Matson Group commissions on sales to customers assigned to it that Plaintiff Matson Group procured or for which it provided substantial assistance in obtaining and, if so, in what amount;

(b) Whether Plaintiff Matson Group and its owner, Plaintiff McGee, are restricted from playing any role in a sale of product from the manufacturer of such product to a customer, Hudson Bay Company, based upon any theory supporting such restriction, including a non-competition covenant, and if so, on what basis and to what extent;

(c) Whether Plaintiff Matson Group and its owner, Plaintiff McGee, have engaged in any wrongful conduct with respect to the sale referenced above;

(d) Whether Plaintiff Matson Group and its owner, Plaintiff McGee, are subject to any restrictions in conducting their business post-termination based upon any theory supporting such restriction, including a non-competition covenant, and if so, on what basis and to what extent;

(e) Whether Plaintiff Matson Group and its owner, Plaintiff McGee, have engaged in any wrongful conduct with respect to any matter other than the sale referenced above in section (b);

28. Plaintiffs are entitled to judgment, declaring that Plaintiff Matson Group is entitled to post-termination commissions on the sales to assigned customers it procured or for which it provided substantial assistance in obtaining and an accounting from Defendant ASM providing it with the information necessary to calculate the commission, as well as payment of commission; and that Plaintiffs are not restricted from engaging in any business activity as a result of any duty owed to Defendant ASM and have not engaged in any wrongful conduct with respect to Defendant ASM, both in reference to the specific sale referenced above and in general.

### FOURTH CLAIM FOR RELIEF

#### (Quantum Meruit)

29. Plaintiff Matson Group realleges each allegation contained in Paragraphs 1 through 28 of its Complaint as if fully rewritten herein.

30. To the extent it is determined that there is no valid and enforceable contract between Plaintiff Matson Group and Defendant ASM, Plaintiff Matson Group is entitled to quantum meruit for the services it has provided to Defendant ASM for which it has not received the payment of commission.

31. Plaintiff Matson Group has provided services to Defendant ASM during the relationship with Defendant ASM for which it was reasonable to expect compensation on Plaintiff Matson Group's part and reasonable to expect to pay compensation of Defendant ASM's part.  Defendant ASM accepted such services and the benefits realized or to be realized from such services and has not paid and does not intend to pay Plaintiff Matson Group any compensation for the rendering of such services.

32.     The services Plaintiff Matson Group rendered to Defendant ASM are capable of being reasonably valued.

33.     Plaintiff Matson Group is entitled to reasonable compensation for the services that it has rendered to Defendant ASM.

## FIFTH CLAIM FOR RELIEF

### (Unjust Enrichment)

34.     Plaintiff Matson Group realleges each allegation contained in Paragraphs 1 through 33 of its Complaint as if fully rewritten herein.

35.     To the extent it is determined that no valid or enforceable contract exists between Plaintiff Matson Group and Defendant ASM, Defendant ASM has been unjustly enriched.

36.     Plaintiff Matson Group has conferred benefits upon Defendant ASM during its relationship with Defendant ASM.

37.     Defendant ASM was aware of the benefits that Plaintiff Matson Group conferred upon it.  It has retained such benefits that have already been realized and intends to retain the benefits that will be realized at some date in the future.

38.     It is unjust and inequitable to permit Defendant ASM to retain such benefits without compensating Plaintiff Matson Group.

39.     Plaintiff Matson Group is entitled to reasonable compensation for the benefits that it has conferred upon Defendant ASM and/or a constructive trust should be imposed on any benefits realized or to be realized by Defendant ASM, the proceeds of which should be disgorged or otherwise paid to Plaintiff Matson Group.

## **SIXTH CLAIM FOR RELIEF**

### (Statutory Violation O.R.C. Section 1335. 11)

40. Plaintiff Matson Group realleges each allegation contained in Paragraphs 1 through 39 of its Complaint as if fully rewritten herein.

41. Plaintiff Matson Group is a "sales representative" within the meaning of .R.C. § 1335.11 (A)(3). Defendant ASM is a "principal" within the meaning of O.R.C. § 1335.11 (A)(2). Defendant ASM compensated or was supposed to compensate Plaintiff Matson Group on the basis of a "commission" within the meaning of .R.C. § 1335.11 (A)(1). A "termination" occurred within the meaning of .R.C. § 1335.11 (A)(4).

42. Defendant ASM's conduct described herein or otherwise constitutes a violation of O.R.C. § 1335.11(C) and (D).

43. Plaintiff Matson Group is entitled to the commissions owed to it, exemplary damages in an amount not to exceed three times the amount of the commissions owed, plus reasonable attorney's fees and court costs pursuant to O.R.C. § 1335.11 (D).

WHEREFORE, Plaintiff demands judgment against the Defendants as follows:

(1) With respect to its First Claim for Relief, an award of compensatory damages;

(2) With respect to its Second Claim for Relief, an award of compensatory damages;

(3) With respect to its Third Claim for Relief, judgment declaring the rights and obligations of the parties, as requested therein,

(4) With respect to its Fourth Claim for Relief, an award of the reasonable value of services provided to Defendant ASM;

(5) With respect to its Fifth Claim for Relief, an award of the reasonable value of

services provided to Defendant ASM and/or the imposition of a constructive trust on any benefits realized or to be realized by Defendant ASM, the proceeds of which should be disgorged or otherwise paid to Plaintiff Matson Group.

(6) With respect to its Sixth Claim for Relief, an award of the commissions owed to Plaintiff Matson Group, exemplary damages in an amount of three times the commissions owed to Plaintiff Matson Group, and reasonable attorney's fees and costs, including but not limited to, Plaintiff Matson Group's attorney's fees and expenses, expert fees and expenses and the costs of this action;

(7) An award of interest on all monies owed to Plaintiff Matson Group by Defendant ASM from the date such monies were owed;

(8) Reasonable attorney's fees and costs, including, but not limited to Plaintiffs' attorney's fees and expenses, expert fees and expenses and the costs of this action; and

(9) For such other relief as this Court may deem just, legal or equitable.

Respectfully submitted,

/s/ Douglas A Andrews
Douglas A. Andrews (0011464)
SCHOONOVER, ANDREWS &
ROSENTHAL, LLC
North Point Tower, Suite 1720
1001 East Ninth Street
Cleveland, Ohio 44114
Telephone: (216) 589-9600
Facsimile: (216) 589-9800

Counsel for Plaintiffs

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues presented herein for which a jury is available.

/s/ Douglas A. Andrews
Douglas A. Andrews (0011464)